RONNELL BANKS *v.* COMMISSIONER
OF CORRECTION
(AC 33940)

DiPentima, C. J., and Beach and Alvord, Js.

Argued September 26—officially released December 24, 2013

*Erich H. Gaston*, assigned counsel, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *David Clifton*, assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Ronnell Banks, appeals from the judgment of the habeas court denying

his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the denial of his petition was improper because his trial counsel provided ineffective assistance in failing (1) to introduce a police report into evidence and cross-examine witnesses therefrom, and (2) to request a continuance to prepare for the cross-examination of a witness. We affirm the judgment of the habeas court.

Following a jury trial, the petitioner was convicted of the crimes of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and interfering with an officer in violation of General Statutes § 53a-167a (a). In affirming the petitioner's conviction, this court set forth the following facts. "On July 12, 2006, at approximately 8 p.m., David Eldridge, a police officer assigned to the statewide narcotics task force, was working undercover as a drug buyer in the parking lot of a Shell gasoline station in Meriden. Eldridge was accompanied by a paid 'confidential witness,' Anthony Clark, who was also posing as a drug buyer. Eldridge and Clark were sitting in an unmarked Subaru that was outfitted with a device that transmitted an audio feed from within the Subaru to police officers in unmarked vehicles located across the street.

"Clark made eye contact with the [petitioner], who asked him what he wanted. Clark responded that he was looking for a '$40 piece,' indicating a certain quantity of drugs. The [petitioner] told Clark to follow him to the intersection of Hobart and Myrtle Streets. The [petitioner] then drove away from the gasoline station, with Eldridge and Clark following him, and drove toward the stated location. Eldridge and Clark parked the Subaru at the intersection of Hobart and Myrtle Streets, and the [petitioner] drove past them and parked on Hobart Street. The [petitioner] then left his car, and Eldridge and Clark lost sight of him. A few minutes later, the

[petitioner] emerged back into view and walked toward the intersection of Hobart and Myrtle Streets. He walked past the parked Subaru, scanned the area and then approached the passenger side window, which was open. The [petitioner] asked Eldridge and Clark what they were looking for, to which Eldridge responded, 'two twenties,' which in street vernacular meant 4.4 grams of crack cocaine or, in other words, two $20 bags of crack cocaine. The [petitioner] pulled a plastic bag from his pocket and allowed Clark to select two packets. Each of the packets contained a white rock like substance that, in Eldridge's training and experience, appeared to be crack cocaine. As the [petitioner] handed the selected bags to Clark, Eldridge handed the [petitioner] two $20 bills. The entire transaction lasted less than one minute.

"Eldridge notified officers who were monitoring the transaction in unmarked vehicles, including a 'raid van' and a minivan, that a drug sale had occurred and gave them a description of the [petitioner]. As Eldridge and Clark left the scene in the Subaru, the other officers arrived. The [petitioner] stepped in front of the minivan to cross the street and apparently noticed that the occupants seated inside the minivan were wearing clothing identifying them as state police officers. The [petitioner] began to run down Hobart Street, and the officers ordered him to stop. The [petitioner] disregarded this command and continued running. The officers chased the [petitioner] for approximately one and one-half blocks. The officers briefly lost sight of the [petitioner] but discovered him hiding by a bay window of a residence on Myrtle Street. The [petitioner] engaged in a scuffle with the officers, but eventually the officers were able to handcuff him." *State* v. *Banks*, 117 Conn. App. 102, 104–105, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009).

After his unsuccessful appeal, the petitioner filed an amended petition for a writ of habeas corpus alleging that his trial counsel, Howard J. Wicker, provided ineffective assistance because he (1) did not properly cross-examine Clark as to bias or motive based on his pending criminal charges, (2) failed to seek a continuance to prepare for the cross-examination of Clark, (3) failed to make the jury aware of key discrepancies between a police report prepared by Officer Michael Siegler and the testimony of Eldridge and Clark, (4) failed to adequately cross-examine Eldridge and Clark, and (5) failed to hire an investigator.[1]

At the habeas trial, the court was presented, inter alia, with testimony from Eldridge and Clark, a police report and affidavit from Siegler, and an oral stipulation. We note that two separate narratives emerge from the evidence presented in the proceedings. The first was set forth by this court in its decision affirming the judgment of conviction; it describes Eldridge and Clark purchasing drugs from a single seller. The second was set forth in the police report and describes only Eldridge purchasing drugs from two sellers.

The following relevant testimony was elicited at the habeas hearing. Consistent with the first narrative, Eldridge and Clark testified that they were involved jointly in the setup and the completion of the drug transaction. Specifically, they testified that Clark spoke with the petitioner at the gasoline station, who then told Clark to follow him to the intersection of Hobart and Myrtle Streets. After arriving at the intersection, Eldridge and Clark testified that the petitioner walked to the window of their vehicle and sold them drugs.

---

[1] The petitioner filed a three count amended petition. In count one, the petitioner asserted a claim of actual innocence; in count two, he asserted the instant claim of ineffective assistance of counsel; and in count three, he asserted a claim of violation of due process. Only count two is at issue in this appeal.

They also testified that they left the area after the sale. Eldridge and Clark further testified that they did not participate in the drafting of the police report. Moreover, Eldridge testified that he met with Siegler after the petitioner's arrest and recounted for him a sequence of events consistent with the first narrative.

The court admitted the police report into evidence. The report offers a second narrative that is partially inconsistent with the testimony of Eldridge and Clark. According to the report, Eldridge arrived at the gasoline station by himself, and, after a short period of time, was approached by an unknown Hispanic male. Thereafter, the Hispanic male told Eldridge to drive to the intersection of Hobart and Myrtle Streets, and to wait for an individual to deliver a quantity of drugs. That individual, identified as the petitioner, arrived at the intersection, walked directly to Eldridge's vehicle, and exchanged two packets of crack cocaine for previously recorded funds from the statewide narcotics task force. Upon leaving the area, Eldridge informed officers that he had completed the transaction and that the petitioner was the seller. After the sale, other officers in the area observed the petitioner walk from Eldridge's vehicle down Hobart Street, at which point they pulled alongside him in unmarked vehicles. Upon seeing the officers exit their vehicles, the petitioner ran down Hobart Street, through yards and over fences. The petitioner was found hiding behind a house on Myrtle Street. Following a physical struggle with officers, the petitioner was arrested. The report notes that no previously recorded funds or drugs were recovered from the petitioner or the area.

In addition to this evidence, an oral stipulation was presented at the start of trial, which the court summarized as follows: "(1) [T]he police report . . . was prepared by Officer Michael Siegler; (2) Officer Siegler signed an affidavit contemporaneously with the police

report attesting to its accuracy; [3] Officer Siegler did not testify at the petitioner's criminal trial; (4) Officer Siegler is presently ill; [and] (5) if called to testify in these proceedings, he would testify that he has no recollection of the events surrounding the petitioner's arrest or his preparation of the report or affidavit."[2]

On the basis of this evidence, the court, *Bright, J.*, found that the petitioner had failed to demonstrate prejudice and denied the petition for a writ of habeas corpus. Thereafter, the court granted the petition for

[2] The court's summation of the oral stipulation is based on the following exchange:

"The Court: We ready to proceed?

"[The Petitioner's Habeas Counsel]: Yes. First thing is I had—well, we have a stipulation that I would like to read into the record.

"The Court: Sure.

"[The Petitioner's Habeas Counsel]: It's a stipulation. It's a factual stipulation regarding Officer Michael Siegler. . . .

"The Court: Okay.

"[The Petitioner's Habeas Counsel]: [Officer] Siegler wrote the sole police report generated in [Department of Public Safety] incident number [MPD] 06-18939, which is marked as an exhibit.

"The Court: Is it a full exhibit?

"[The Respondent's Counsel]: [Exhibit] 2 by agreement, yes.

"The Court: All right. So he's the sole—he wrote the sole police report, and he is the sole author of that police report?

"[The Petitioner's Habeas Counsel]: Yes.

"The Court: Which is full exhibit 2.

"[The Petitioner's Habeas Counsel]: Yes, dated July 12, 2006. [Officer] Siegler also signed the affidavit which is also marked as an exhibit, I believe, without objection.

"[The Respondent's Counsel]: That's [exhibit] 3.

"The Court: Okay. So the signed affidavit, which is exhibit 3, which is a full exhibit by agreement?

"[The Respondent's Counsel]: Correct. ·

"The Court: All right.

"[The Petitioner's Habeas Counsel]: That affidavit is also dated July 12, 2006, swearing that the report, the police report that I just mentioned relating to [the petitioner], 'is an accurate statement of the information so received by me.' [Officer] Siegler did not testify in the [petitioner's criminal trial]. [Officer] Siegler is presently ill, and rather than forcing him to come up here to testify, the respondent and I are stipulating, as I am presently doing, and if Officer Siegler were called to testify here, he would have no recollection of the events, so ends the stipulation.

certification to appeal. This appeal followed. Additional facts will be provided as necessary.

We begin with the applicable standard of review and relevant principles of law. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . .

"[I]t is well established that [a] criminal defendant is constitutionally entitled · to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, supra, 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the

---

"The Court: Attorney [David] Clifton [the respondent's counsel], is that correct?

"[The Respondent's Counsel]: Yes, Your Honor.

"The Court: All right."

prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 470–71, 62 A.3d 534, cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

I

The petitioner first claims that the court erred in denying his petition because Wicker, his trial counsel, provided ineffective assistance in failing to introduce the police report into evidence and to cross-examine witnesses therefrom. He argues that had the report been admitted into evidence and used to cross-examine witnesses, it would have discredited the testimony of Eldridge and Clark, which in turn, would have raised a reasonable doubt in the minds of the jurors as to his guilt. We disagree.

In denying this claim, the court concluded that the petitioner failed to meet his burden of proving prejudice under *Strickland*. Specifically, the court found that the discrepancies between the report and the testimony of Eldridge and Clark were insufficient to prove prejudice. According to the report, Eldridge, acting alone, spoke with a Hispanic male at the gasoline station and then drove to the intersection of Hobart and Myrtle Streets where the petitioner sold him drugs. By contrast, Eldridge and Clark testified that they were together at the gasoline station, when the petitioner told Clark to follow him to the intersection of Hobart and Myrtle Streets, where the petitioner then sold the two of them

drugs. We agree with the court that the deviations in the report, even had they been presented to the jury, would nevertheless be insufficient to establish prejudice.

"In order to prevail on a claim of ineffectiveness of counsel, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland* v. *Washington*, supra, 466 U.S. 694. [T]he question is whether there is a reasonable probability that, absent the [alleged] errors, the [fact finder] would have had a reasonable doubt respecting guilt. Id., 695.

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Id., 695–96. [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. Id., 696. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id., 686." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 688–89, 51 A.3d 948 (2012).

The police report would not have had a pervasive effect on the inferences to be drawn from the evidence. At the criminal trial, the petitioner's defense essentially

was one of mistaken identity. The petitioner presented witnesses who testified that he was visiting his child's babysitter on Hobart Street at the time of the drug sale. The report would not have bolstered the credibility of those witnesses and would not have corroborated their testimony. In fact, the report would have implicated the petitioner in the drug sale. The petitioner also highlighted the fact that previously recorded funds or drugs were not recovered from him or the surrounding area. The report only would have been cumulative of other evidence in the record establishing this fact. See *Fisher* v. *Commissioner of Correction*, 45 Conn. App. 362, 367–68, 696 A.2d 371 (insufficient showing of prejudice even though evidence not presented at criminal trial would have raised some doubts), cert. denied, 242 Conn. 911, 697 A.2d 364 (1997).

Furthermore, two additional members of the statewide narcotics task force testified for the state at the criminal trial. One of the witnesses, state police Trooper Sean Krauss, corroborated portions of the testimony from Eldridge and Clark. Krauss testified that he observed the petitioner standing by the passenger side window of the vehicle driven by Eldridge and Clark at the time of the drug sale. The collective voices of Krauss, Eldridge, and Clark likely would have overpowered the singular voice of the report. See *Madagoski* v. *Commissioner of Correction*, 104 Conn. App. 768, 776, 936 A.2d 247 (2007) (strength of state's case is significant factor in determining whether alleged error caused prejudice), cert. denied, 286 Conn. 905, 944 A.2d 979 (2008).

Additionally, the verdict was supported by other unaffected evidence from which to infer guilt. The jury heard that the petitioner ran away from police officers who were shouting orders to stop. See *State* v. *Banks*, supra, 117 Conn. App. 105. It also heard that the petitioner was discovered hiding under a bay window. Id. Finally,

it heard that the petitioner engaged in a scuffle with officers before his arrest. Id. This evidence of the petitioner's conduct likely raised an inference of consciousness of guilt; see, e.g., State v. Figueroa, 257 Conn. 192, 196–97, 777 A.2d 587 (2001); and thus, could have provided additional support for the verdict.

After considering the totality of the evidence before the jury, the petitioner has failed to show that there is a reasonable probability that, but for Wicker's alleged deficient performance, the result of the proceeding would have been different.[3] Accordingly, the court properly determined that the petitioner failed to meet his burden of proving prejudice under Strickland.

## II

The petitioner next claims that the court erred in denying his habeas petition because Wicker provided ineffective assistance in failing to request a continuance to prepare for the cross-examination of Clark. We are not persuaded.

The following additional facts found by the court are necessary for our resolution of the petitioner's claim. "On the morning of the first day of evidence, November 7, 2006, the petitioner and Wicker learned for the first time that Clark was going to be called as a witness. . . . Based on the police report prepared by . . . Siegler, which made no mention of Clark or a confidential witness, Wicker had thought that the only person associated with law enforcement involved in the alleged drug transaction was . . . Eldridge. Wicker did not ask for a continuance to consider how to respond to this

[3] Because we conclude that the petitioner failed to demonstrate prejudice, we do not address whether Wicker, in failing to subpoena and call Siegler, or in failing to prepare a theory under which to admit the report, provided deficient performance. See Hall v. Commissioner of Correction, 124 Conn. App. 778, 783, 6 A.3d 827 (2010) (reviewing court can find against petitioner on either prong), cert. denied, 299 Conn. 928, 12 A.3d 571 (2011).

new disclosure. Nor did he request time to prepare to cross-examine Clark."

In rejecting the petitioner's claim, the court concluded as follows. "The petitioner offered no evidence as to what would have been gained by a continuance. There was no evidence presented of any additional information Wicker could have learned about Clark, had the defense had more time to prepare. Nor has the petitioner offered any evidence as to how the cross-examination of Clark might have been different had Wicker sought and been granted a continuance. Consequently, the petitioner has failed to prove any prejudice as a result of Wicker's decision not to ask for a continuance."

Upon an independent and careful review of the record, we agree with the court that the petitioner has failed to establish that he was prejudiced by Wicker's failure to request a continuance. See *Thomas* v. *Commissioner of Correction*, supra, 141 Conn. App. 472 (failure to present evidence that testimony would have been helpful to defense is fatal to ineffectiveness claim).

The judgment is affirmed.

In this opinion the other judges concurred.