******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SCOTT SHEFELBINE *v.* COMMISSIONER
OF CORRECTION
(AC 34666)

Beach, Sheldon and Peters, Js.

*Argued February 19—officially released May 13, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Jonathan Ross Sills*, for the appellant (petitioner).

*Michael Proto*, assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (respondent).

*Opinion*

PETERS, J. In this appeal from the habeas court's denial of a petition for a writ of habeas corpus, the petitioner argues that the guilty pleas he entered for various charges resulting from sexual misconduct with minors were not knowing and voluntary because his pretrial counsel, the sentencing judge, and the prosecutor failed to apprise him properly of the terms of the plea agreement. We disagree and affirm the judgment of the habeas court.

On November 16, 2009, the petitioner, Scott Shefelbine, filed a two count petition for a writ of habeas corpus, alleging ineffective assistance of pretrial counsel and violation of due process for insufficiency of canvass with respect to his guilty pleas for three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), three counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2), five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), three counts of delivery of alcohol to a minor in violation of General Statutes § 30-86, one count of assault in the third degree in violation of General Statutes 53a-61, and one count of unlawful restraint in the second degree in violation of General Statutes § 53a-96. The habeas court later permitted the petitioner to amend his petition to add a count alleging prosecutorial impropriety. The respondent, the Commissioner of Correction, denied the allegations and raised the special defense of procedural default for the counts alleging insufficiency of canvass and prosecutorial impropriety. Following an evidentiary hearing, the court rejected the respondent's special defense, but denied the amended petition for a writ of habeas corpus on all grounds. Following the court's granting of certification, the petitioner appealed.

The habeas court, in its memorandum of decision, described the factual background of the case. "The petitioner . . . was the defendant in ten cases pending in the judicial district of Tolland at Rockville. The sum and substance of the evidence the state was prepared to present in these many cases if they had gone to trial was that the petitioner was a thirty-one year old man who used the Internet, his job at a local high school, and other available resources, to seek out girls under the age of sixteen. By intentionally modifying his personal appearance, such as by wearing a hairpiece to cover his male-pattern baldness, and by his words, the petitioner would misrepresent his age to these girls, and their parents in some cases, to be between seventeen and nineteen years of age. He would eventually engage in, or attempt to engage in, sexual conduct with these underage girls, sometimes forcefully, and provided a number of them with alcohol in order to advance these intentions.

"During all proceedings in the criminal court relevant to this petition, the petitioner was represented by Attorneys Jeffrey Denner and Richard Brad Bailey of Denner Pellegrino, LLP, of Boston, Massachusetts . . . pursuant to a written retainer agreement. On October 20, 2008, the petitioner entered guilty pleas to the [aforementioned charges]. Pursuant to the plea agreement, the court . . . sentenced the petitioner to a total effective sentence of thirty-five years, suspended after twenty years of incarceration, followed by ten years of probation."

At the habeas trial, the petitioner's claims concerned the circumstances in which he entered his guilty pleas. Alleging ineffective assistance of counsel, insufficiency of canvass, and prosecutorial impropriety, the petitioner argued that his guilty pleas were not made knowingly and voluntarily. Over the course of several days, the habeas court heard testimony from the petitioner, the petitioner's father, Attorney Bailey, and the prosecutor. The court also heard testimony from competing expert witnesses regarding the effectiveness of pretrial counsel's representation. Following the hearings, the court denied the petitioner's petition for a writ of habeas corpus, finding that there was no impropriety on the part of his pretrial counsel, the sentencing judge, or the prosecutor, and that the petitioner's guilty pleas were knowing and voluntary.

On appeal, the petitioner challenges the habeas court's findings rejecting his claims of ineffective assistance of counsel, insufficiency of canvass, and prosecutorial impropriety. He also challenges various evidentiary rulings by the habeas court. We affirm the judgment of the court.

I

The petitioner challenges the habeas court's finding that he had failed to prove ineffective assistance of counsel on three grounds. He maintains that pretrial counsel (1) failed to explain the elements of the relevant offenses adequately, (2) misrepresented the terms of the plea agreement regarding the petitioner's mother, and (3) labored under a conflict of interest. We are not persuaded.

A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Our Supreme Court has recognized that pretrial negotiations implicating the decision of whether to plead guilty constitute a critical stage in criminal proceedings and that plea bargaining is an integral component of the criminal justice system. *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995). A habeas petitioner who seeks to vacate a guilty plea on the ground of ineffective

assistance of counsel must prove that (1) pretrial counsel's representation fell below an objective standard of reasonableness and (2) the deficient representation was prejudicial in that the petitioner, but for the deficient representation, would not have pleaded guilty and instead would have insisted on going to trial. Id., 155–57. "It is well established that when analyzing a claim of ineffective assistance, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 551, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004).

The factual findings made by the habeas court regarding pretrial counsel's representation of the petitioner will not be disturbed absent a showing that they were clearly erroneous. *Banks* v. *Commissioner of Correction*, 147 Conn. App. 331, 338, 82 A.3d 658 (2013). The court's ultimate determination as to whether these findings satisfy the legal standard for ineffective assistance of counsel, however, is subject to plenary review. Id.

A

First, the petitioner claims that the habeas court improperly found that pretrial counsel had adequately advised him of the elements of the offenses to which he was pleading guilty. Specifically, he maintains that counsel did not explain the differences between sexual intercourse and sexual contact, including the difference in age of consent, and did not apprise him of the manner in which each of these distinctions would affect the state's case with respect to the alleged victims.

In support of these contentions, the petitioner cites the transcript of the sentencing proceeding where his guilty pleas were entered, highlighting certain remarks that arguably suggest that he did not completely understand the charges to which he was pleading guilty. In particular, he draws our attention to the following colloquy wherein pretrial counsel interrupted the petitioner as he appeared to be seeking clarification of the charges:

"The Court: And the final thing I want to ask you is, I'm not asking you whether you agree that you engaged in the acts that were described by the state's attorney, but I want you to understand that the pleas to which you've entered guilty today are for offenses that were described by the state's attorney today. Do you understand that's what you're pleading guilty to, what she described?

"[The Petitioner]: "Again, it's a little foggy and confused, but I suppose—

"[Pretrial Counsel]: "Your Honor, what I believe the [petitioner] is attempting to articulate now is that he definitely pleads guilty to the saying that the elements

of the charges alleged have in fact been met by the state's attorney, but he doesn't necessarily agree with all the details.

"The Court: I understand, I'm not asking him whether he agrees he committed these offenses. I'm asking him if he understands that the offenses described by the state's attorney today, that's what he's pleading guilty to. He understands?

"[The Petitioner]: Yeah."

It is well established that we defer to the habeas court's findings as to pretrial counsel's representation. *Banks* v. *Commissioner of Correction*, supra, 147 Conn. App. 338. The court found that the totality of the transcript clearly showed that "the petitioner had a full understanding of the nature and elements of the offenses to which he was pleading . . . ." The court expressly credited the testimony of Attorney Bailey that he had "discussed the elements of each offense with the petitioner thoroughly and on more than one occasion in preparation for the plea date." Given these findings, supported by substantial evidence in the record, we cannot conclude that pretrial counsel's representation of the petitioner was deficient in this respect.

B

Next, the petitioner claims that the habeas court improperly found that pretrial counsel did not misrepresent the terms of the plea agreement regarding the conduct of the petitioner's mother. Specifically, he maintains that pretrial counsel told him that if he pleaded guilty, his mother would not be charged with any crime in conjunction with his proceedings.

The following additional facts, as found by the habeas court, are relevant to this claim. The state's investigation of the petitioner produced evidence that the petitioner's mother, Gail Shefelbine, may have spoken directly to the petitioner's victims or their parents and misrepresented that he was a teenager. There was also evidence that the petitioner brought some of the victims to the Shefelbine home with his mother's knowledge. This conduct may have exposed the mother to criminal liability as an accessory to or a conspirator in committing some of the petitioner's crimes. It is undisputed that, as part of the petitioner's plea agreement, the state agreed not to pursue charges against the mother for this conduct.

The dispute at the habeas proceedings, and on appeal, about the terms of the plea agreement concerns the mother's exposure to perjury charges. After the petitioner was initially arrested, he was released on bond subject to certain conditions. When the state learned that the petitioner was in violation of these conditions, a bond revocation hearing was held at which the petitioner's mother testified for the defense. It was later revealed that she had provided materially false testi-

mony and documentation at the hearing and a warrant was issued for her arrest on nine counts of perjury. State's Attorney Elizabeth Leaming, the prosecutor in the petitioner's case, was in possession of the arrest warrant on the day that she participated in the petitioner's sentencing hearing, but the mother was not arrested until about a month later. The mother ultimately pleaded guilty to one count of perjury.

The petitioner claims that the state's prosecution of his mother for perjury violated the terms of the plea agreement as he understood them at the time he pleaded guilty. The petitioner relies on the transcript of the sentencing proceeding to support this claim:

"The Court: [W]ere there any other promises made to get you to plead guilty besides the recommended sentence?

"[The Petitioner]: That they were [not] going to charge my mother?[1]

"The Court: Is that—was that part of the—

"[The Prosecutor]: There was a representation made, Your Honor, as part of—that the state is not intending to prosecute the mother as an accessory or as conspiracy to any of the sexual assaults for which he's been charged.

"The Court: Are there other charges that are not being pursued that are going to be nolled?

"[The Prosecutor]: That's correct. Any open counts, and I believe there is one open file that the state will enter a nolle.

"The Court: Okay. Any other terms of the agreement? That's as far as the agreement goes, the sentences, the charges, and there's no pursuit of these other charges—

"[The Prosecutor]: Correct.

"The Court: —against his mother.

"[Pretrial Counsel]: And, Your Honor, there's also an agreement that there will be no further prosecutions based—arising out of these investigations or based on any information from the state's attorney at this time.

"The Court: Is that correct?

"[The Prosecutor]: Actually, that is true, Your Honor, I apologize. I did put that in writing to counsel, and that's accurate." (Footnote added.)

The petitioner argues that his unqualified comment that his mother was not going to be charged suggests that he believed that she would not be prosecuted for any crimes arising from the proceedings against him, including perjury.

Although the transcript is ambiguous as to what the petitioner understood in regard to his mother's exposure to a perjury charge, the habeas court's findings of

fact are clear. The court found that pretrial counsel specifically informed the petitioner that perjury charges were being pursued against his mother, that negotiations to have the charges dropped as part of the plea agreement had been fruitless, and that the deal would therefore not include any agreement in regard to perjury. The court found that the petitioner nonetheless chose to proceed with the guilty pleas. The court expressly found that the petitioner lacked credibility in his assertion that he had not been apprised of the perjury charges. The petitioner has not persuaded us to disturb these findings of fact.

C

Next, the petitioner claims that the habeas court improperly found that pretrial counsel did not labor under a conflict of interest. Specifically, he argues that pretrial counsel's representation was ineffective because the flat fee paid by the petitioner acted as a disincentive for pretrial counsel to pursue a trial.[2]

In order to provide the effective assistance to which a criminal defendant is constitutionally entitled, defense counsel must be free from any conflict of interest. *Day v. Commissioner of Correction*, 118 Conn. App. 130, 136, 983 A.2d 869 (2009), cert. denied, 294 Conn. 930, 986 A.2d 1055 (2010). "Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where . . . the [petitioner] claims that his counsel was burdened by an actual conflict of interest . . . the [petitioner] need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the [petitioner] has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) Id. 136–37.

"An actual conflict of interest is more than a theoretical conflict. . . . [T]he possibility of conflict is insufficient to impugn a criminal conviction. . . . A conflict is merely a *potential* conflict of interest if the interests of the [petitioner] may place the attorney under inconsistent duties at some time in the future. . . . To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party. . . . A mere theoretical division of loyalties is not enough." (Citations omitted; emphasis in original; internal quotation marks

omitted.) *Anderson* v. *Commissioner of Correction*, 127 Conn. App. 538, 550, 15 A.3d 658, 666 (2011), aff'd, 308 Conn. 456, 64 A.3d 325 (2013). Whether the circumstances of pretrial counsel's representation, as found by the habeas court, amount to an actual conflict of interest is a question of law of which our review is plenary. See *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 585, 867 A.2d 70, cert. denied, 273 Conn. 930, 873 A.2d 997 (2005).

Here, the petitioner paid pretrial counsel a $300,000 retainer for the entire representation, without regard to whether the case was resolved by plea agreement or trial. The petitioner now argues that a bifurcated fee, with one fee for pretrial representation and a separate fee in the case of trial, would have been the proper arrangement to avoid a conflict of interest. Under the circumstances of this case, we are not persuaded that an actual conflict of interest existed. The habeas court found that "[pretrial] counsel did a yeoman's job in all respects on the petitioner's behalf in these matters." Having failed to show that the fee arrangement hampered pretrial counsel's representation, the petitioner cannot prevail on his claim of ineffective assistance of counsel on this ground.

## II

The petitioner next claims that the habeas court improperly found that the sentencing judge's plea canvass was sufficient. Specifically, he argues that the judge, in the face of apparent confusion and hesitance by the petitioner, failed to ensure that the petitioner fully understood all aspects of the plea agreement, and that his pleas were knowing and voluntary. We disagree.[3]

"To be valid, guilty pleas must be made knowingly and voluntarily. [T]he trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement. [U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . When a defendant pleads guilty, he waives important fundamental constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . . We, therefore, require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . In order to make a knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including all relevant information concerning the sentence. . . . The defendant must also be aware of the actual value of any commitments made to him by the court

. . . because a realistic assessment of such promises is essential in making an intelligent decision to plead guilty. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . [W]e conduct a plenary review of the circumstances surrounding [a] plea to determine if it was knowing and voluntary." (Citation omitted; internal quotation marks omitted.) *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 5–6, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008).

The petitioner argues that the transcript of the sentencing proceeding demonstrates that he lacked a fundamental understanding of the plea bargain process and was confused about the crimes to which he was pleading guilty and the terms of the agreement.[4] He further maintains that the following colloquy suggests that he was coerced by pretrial counsel into pleading guilty and that the sentencing judge had a duty to inquire further in light of his hesitance:

"The Court: Has anyone threatened or forced you into pleading guilty?

"[The Petitioner]: I suppose badgering doesn't fall under that.

"The Court: Well, it depends on what the nature of the statement is. I understand that it may have taken a lot of discussions, but I'm talking about has anyone threatened, said if you didn't plead guilty and accept this recommendation, certain other things would happen to you, and I'm not talking about explaining what might happen after a trial, what possibilities that you're facing. I'm talking about threats that if you don't accept this recommendation, then certain other specific ill events would happen to you. Anything of that nature?

"[The Petitioner]: Reluctantly, no."

In reviewing the habeas court's conclusion that the petitioner's guilty pleas were made knowingly and voluntarily, we review the entire record. See *Almedina* v. *Commissioner of Correction*, supra, 109 Conn. App. 5–6. The court expressly found that "the petitioner had a full understanding of what he was pleading to, the elements of the offenses, and the terms of the plea agreement" and that he was made aware by pretrial counsel of his mother's possible exposure to arrest on perjury charges. Further, the petitioner has failed to identify any evidence in the record that he was coerced to plead guilty. Rather, the habeas court found that pretrial counsel performed admirably in their role representing the petitioner. Given these findings, supported by substantial evidence in the record, we agree with the habeas court's conclusion that the sentencing judge was under no obligation to inquire further into the petitioner's state of mind.

III

Next, the petitioner claims that the habeas court improperly found no impropriety on the part of the prosecutor. Specifically, he argues that the prosecutor had a duty to clarify the terms of the plea agreement to the petitioner when he expressed confusion as to his mother's criminal exposure at the time of his guilty pleas. He also argues that the prosecutor should have notified him of the outstanding warrant for his mother's arrest on charges of perjury. We are not persuaded.[5]

Our review of claims of prosecutorial impropriety involves a two step analytical process. First, we must examine whether prosecutorial impropriety occurred. *Edwards* v. *Commissioner of Correction*, 141 Conn. App. 430, 439, 63 A.3d 540, cert. denied, 308 Conn. 940, 66 A.3d 882 (2013). Second, if an impropriety has occurred, we then must consider whether it violated the petitioner's constitutional due process right to a fair trial. Id.

At the sentencing hearing, the prosecutor unambiguously stated that, as part of the plea agreement, the state was not intending to prosecute the petitioner's mother as an accessory or as a conspirator for any of the crimes with which the petitioner had been charged. Furthermore, the habeas court expressly found that the prosecutor had already informed the petitioner's pretrial counsel of the warrant's existence at the time the petitioner pleaded guilty. Any confusion the petitioner may have had as to his mother's exposure to perjury charges therefore cannot be attributed to the prosecutor's conduct. Thus, it is apparent that no prosecutorial impropriety occurred.

IV

Finally, the petitioner challenges several evidentiary rulings made by the habeas court. The petitioner argues that the court improperly (1) restricted the petitioner's examination of the prosecutor regarding her behavior at the sentencing proceeding, (2) restricted the petitioner's examination of his father and Attorney Bailey regarding the terms of the plea agreement, and (3) refused to allow the testimony of a private investigator offered to impeach pretrial counsel under the residual exception to the hearsay rule.

The rulings with which the petitioner takes issue are of the type left within the sound discretion of the habeas court. See *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 318, 34 A.3d 1046 (2012) ("Unless an evidentiary ruling involves a clear misconception of the law, the [habeas] court has broad discretion in ruling on the admissibility . . . of evidence. . . . The [habeas] court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." [Internal quotation marks omitted.]). After a careful review of the record, we are not persuaded that the habeas court abused its discretion

in regard to these evidentiary matters.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the transcript reads "That they were going to charge my mother," all parties at the habeas proceedings agreed that either the transcript was erroneous or that the petitioner had misspoken.

[2] The petitioner also claims that pretrial counsel labored under a conflict of interest in that they had a financial interest in representing the petitioner's mother on the perjury charges against her and therefore were motivated to hastily resolve the petitioner's case. The habeas court concluded that there was no evidence whatsoever to support this allegation, and the petitioner has failed to identify anything in the record that would give us cause to question that conclusion.

[3] We note that, typically, when a habeas petitioner has failed to file a motion to withdraw his guilty plea or to challenge the validity of the plea on direct appeal, a habeas challenge to the validity of the plea based on a claim of insufficient canvass by the trial court is subject to procedural default. See *Council* v. *Commissioner of Correction*, 286 Conn. 477, 489, 944 A.2d 340 (2008). As the habeas court rejected the defense of procedural default in this case, and the respondent has not adequately challenged that ruling on appeal, we review the habeas court's decision as to the claim of insufficiency of canvass on the merits. See *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 5–6, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008).

[4] In particular, the petitioner asks us to consider the following portions of the transcript:

"The Court: All right. Mr. Shelfebine, [I] ask you to stand please. I have some questions to make sure you understand what it is you're doing in entering these pleas of guilty . . . . Have you discussed these matters with your attorneys?

"[The Petitioner]: Yes.

"The Court: Are you satisfied with the attorneys' advice to you? I'm not asking you if you're pleased with the disposition, but I'm asking if you're satisfied with the legal advice they've given you.

"[The Petitioner]: With all due respect, Your Honor, I'm kind of confused with all these—throughout the whole process here, but I guess they, they—I hired them to tell me what to think, so, yeah, I guess.

"The Court: Well, they don't tell you what to think. They give you legal information so that you can make a decision. If you're confused, you can ask your attorneys right now about any matters that are confusing to resolve it.

"[The Petitioner]: All right. Yes.

"The Court: You're satisfied with the advice they've given you?

"[The Petitioner]: Sure.

"The Court: And if there's any other matters you're confused about, this is the time to resolve them so that we don't have a situation where later on you're going to indicate, well, I didn't really understand it. Do you have any other questions you want to ask your attorneys? You ask them. Don't tell me what it is you want to ask them.

"[The Petitioner]: Yea, whatever. Yeah, have no questions, Your Honor.

"The Court: All right. Did your attorneys explain to you the elements of each of these offenses, that is what the state's attorneys, the prosecutor, would have to prove in order to convict you . . . ? Did they explain those to you?

"[The Petitioner]: Yeah, they did.

"The Court: Did they explain the maximum penalties to you for each of the offenses?

"[The Petitioner]: Yes, they did.

* * *

"The Court: By pleading guilty, you're giving up certain rights. . . . Do you understand that?

"[The Petitioner]: Again, Your Honor, understanding all this and the process is one big confusion for me, but yes, I do.

"The Court: What are those—what are you confused about?

"[The Petitioner]: Yes.

"The Court: What rights that you're giving up are you confused about?

"[The Petitioner]: I understand the rights I'm giving up.

"The Court: Sir, I don't want you to just answer yes because you want to get this over with. If you have questions about these rights, you can ask me, ask your attorneys, and now is the time to do it. So, I give you that opportunity right now to ask your attorneys any question or ask me any question about the rights that you're giving up by pleading guilty instead of

having a trial.

"[The Petitioner]: Do I have to—

"The Court: Ask your attorneys.

"[The Petitioner]: Okay. Go ahead with it, yeah, Your Honor.

"The Court: You have any more questions to ask?

"[The Petitioner]: No, not really."

[5] As with the claim of insufficient canvass, we review this prosecutorial impropriety claim on the merits because the respondent has not adequately challenged on appeal the habeas court's rejection of the defense of procedural default.

———————————————