******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANGEL NIEVES *v.* COMMISSIONER OF CORRECTION
(AC 38172)

Beach, Keller and Norcott, Js.

*Argued September 20—officially released December 6, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Damon A. R. Kirschbaum*, with whom, on the brief,
was *Vishal K. Garg*, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom,
on the brief, were *Gail P. Hardy*, state's attorney, and
*Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

NORCOTT, J. Following a grant of certification to appeal, the petitioner, Angel Nieves, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly concluded that he had not demonstrated that his trial counsel rendered ineffective assistance by failing to present an exculpatory statement made by a state's witness describing the perpetrator of the crime with which the petitioner was charged. We disagree and, accordingly, affirm the judgment of the habeas court.

The following undisputed facts and procedural history are relevant to the disposition of the petitioner's claims. The victim was murdered during a shooting incident on April 18, 2002. *State* v. *Nieves*, 106 Conn. App. 40, 43, 941 A.2d 358, cert. denied, 286 Conn. 922, 949 A.2d 482 (2008). The petitioner was arrested as a suspect in March, 2003.[1] Of the six witnesses who testified, three gave a similar description of the shooter to the police and again at trial, and three positively identified the petitioner as the shooter in court.[2] One witness testified that the petitioner admitted to murdering the victim. The witness whose statement is at issue in this case, Maria Quinones, did not testify but gave the same general description of the shooter to Christine Mertes, the canvassing officer. Unlike other witnesses, however, Quinones described the shooter as having neck tattoos.[3]

On May 31, 2005, following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a (a), carrying a pistol without a permit in violation of General Statutes § 29-35, and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). On August 30, 2005, the petitioner was sentenced to a total effective sentence of sixty-eight years of imprisonment. The petitioner's conviction was affirmed on direct appeal. *State* v. *Nieves*, supra, 106 Conn. App. 40.

On December 16, 2014, the petitioner filed an amended petition for a writ of habeas corpus, alleging that his trial counsel provided ineffective assistance because they[4] failed to offer as "substantive evidence a statement relating to the identification of the shooter under an exception to the hearsay rule." On March 16, 2015, the habeas court, *Oliver, J.*, heard evidence at a hearing on the petition. On June 19, 2015, the court denied the petition, finding that trial counsel had not provided ineffective assistance. The petitioner then filed a petition for certification to appeal from the court's judgment, which the court granted on July 2, 2015. This appeal followed. Additional facts will be set forth as necessary.

The petitioner first claims that his trial counsel ren-

dered ineffective assistance by failing to introduce the purportedly exculpatory statement of Quinones, despite its potential availability under the spontaneous utterance exception to the hearsay rule, which was based on trial counsel's "erroneous belief that the identification was an inadmissible out-of-court-statement." We are not persuaded.

We begin by setting forth the applicable standard of review. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 686, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 647 (1984)], [our Supreme Court] has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 538, 138 A.3d 378 (2016).

"[According to] *Strickland*, [an ineffective assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original; internal quotation marks omitted.) *Hall* v. *Commissioner of Correction*, 124 Conn. App. 778, 782–83, 6 A.3d 827 (2010), cert. denied, 299 Conn. 928, 12 A.3d 571 (2011).

"In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Delvecchio* v. *Commissioner of Correction*, 149 Conn. App. 494, 500, 88 A.3d 610, cert. denied, 312 Conn. 904, 91 A.3d 906 (2014). "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, 147 Conn. App. 331, 338–39, 82 A.3d 658 (2013), cert. denied, 311 Conn. 916, 84 A.3d 883 (2014).

As to the performance prong, "[i]t is well established that when analyzing a claim of ineffective assistance, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal

quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 551, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004).

"[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, supra, 164 Conn. App. 539.

The facts found by the habeas court regarding trial counsel's representation of the petitioner will not be disturbed absent a showing that they were clearly erroneous. *Banks* v. *Commissioner of Correction*, supra, 147 Conn. App. 338. The court's ultimate determination as to whether these findings satisfy the legal standard for ineffective assistance of counsel, however, is subject to plenary review. Id.

In the present case, the habeas court determined that trial counsel's representation of the petitioner was not deficient with respect to counsel's decision not to introduce Quinones' statement that the shooter had neck tattoos under the spontaneous utterance exception to the hearsay rule. The court also found that the petitioner was not prejudiced by his trial counsel's performance. Specifically, the court correctly and succinctly found that Quinones, in a subsequent statement to police, "specifically identif[ied] the petitioner as the shooter," and that counsel's decision not to attempt to offer the statement regarding the neck tattoos "was based on their carefully considered legal opinions and experience . . . ." The court found that counsel "did not think the initial statement qualified as an excited utterance" and were concerned about the possibility of the state offering Quinones' second statement identifying the petitioner as the shooter into evidence as a response to any attempt to introduce the statement regarding the neck tattoos. The court further refused to "assume that the jury would have credited the oral statement offered by the defense to such a degree that it would have overcome not only the evidence in the trial record, but a later identification by that same witness of the

petitioner as the killer." These determinations, combined with the state's "strong case against the petitioner, including several eyewitnesses to the murder of the victim," supported a finding that the petitioner had not suffered any prejudice.

We note that "our review of an attorney's performance is especially deferential when his or her decisions are the result of relevant strategic analysis. . . . Thus, [a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken." (Citation omitted; internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, supra, 164 Conn. App. 540–541.

The petitioner's trial counsel specifically testified before the court that they had considered and chosen not to present Quinones' statement as part of their trial strategy. They weighed that choice against the alternative, which was to present it and risk the state offering into evidence her subsequent statement identifying the petitioner as the shooter. Thus, even if Quinones' statement regarding the neck tattoos was a spontaneous utterance, and, thus, admissible as an exception to the rule against hearsay,[5] the petitioner's trial counsel were not obligated to present it. "[T]he presentation of testimonial evidence is a matter of trial strategy." *Chace* v. *Bronson*, 19 Conn. App. 674, 680–81, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).

Trial counsel reasonably determined that offering Quinones' statement would have hurt, rather than helped, the petitioner's case.[6] "[O]ur habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when . . . counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or *potentially harmful to the case* . . . ." (Emphasis added.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 681–82, 51 A.3d 948 (2012).

Here, there were multiple reasons for trial counsel not to present Quinones' statement.[7] Quinones' other descriptions of the shooter in her first statement were virtually identical to those of the other eyewitnesses, and thus, it is inconceivable that, as the petitioner argues, this evidence would have "significantly undermined the state's case against [him]." Presenting the first statement would allow the state to then explore potential explanations for the discrepancy between her first statement and those of the other eyewitnesses.[8] Trial counsel would therefore have had to impeach their own witness. Offering the statement regarding the neck tattoos also would have allowed the state to not only call Quinones as a witness, but also to offer Quinones'

subsequent identification statement through the testimony of the lead detective, William Siemionko.[9] Conn. Code. Evid. § 8-8 (impeachment of nontestifying declarant with inconsistent statement).[10] That statement, if admitted, would have been potentially harmful to the petitioner's case, as it would have not only discredited Quinones' original statement regarding the tattoos, but would have amounted to evidence of another eyewitness identification.[11] Trial counsel testified during the habeas trial proceedings that presenting testimony through Mertes' report was imprudent as police officers are aligned with the state. Thus, there were multiple strategic reasons to not offer Quinones' statement regarding the tattoos, despite its potentially exculpatory weight.

The petitioner also argues that the court erred in concluding that Quinones' statement identifying the petitioner as the shooter would have been admitted into evidence. Specifically, the petitioner asserts that there was no reasonable basis for the state to present Quinones as a witness to testify with regard to her identification of the petitioner as the shooter due to her violation of a sequestration order. However, the petitioner does not cite any case law to support his argument that the sole remedy to a violation of a sequestration order is to preclude that witness' testimony in its entirety. In fact, while a court "may choose to preclude a witness from testifying or to strike a witness' testimony to remedy unfairness resulting from a violation . . . the exclusion of witness testimony . . . is not the preferred remedy for a violation of a sequestration order." (Citation omitted; internal quotation marks omitted.) *State* v. *Guerrera*, 167 Conn. App. 74, 99, 142 A.3d 447, cert. granted on other grounds, 323 Conn. 922,     A.3d     (2016). As Quinones' subsequent statement identifying the petitioner as the shooter probably could[12] have been admitted under several scenarios, we must reject the petitioner's argument.

For the foregoing reasons, the habeas court properly concluded that the petitioner's trial counsel had not performed below an objective standard of reasonableness. Accordingly, the petitioner's claim of ineffective assistance fails the performance prong of *Strickland*,[13] and we need not reach whether the petitioner was prejudiced[14] in a way that deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner turned himself in to the authorities after evading police for almost a year.

[2] Although the descriptions varied slightly, three witnesses agreed that the shooter was Hispanic and wore a yellow T-shirt and jeans or dark shorts. Two of those three also testified that the shooter was five feet seven inches or five feet eight inches. One in-court witness testified that the petitioner was the shooter, but refused to look at him for in-court identification. The trial court noted that it had "very reluctant, frightened . . . witnesses in this case."

[3] According to the record, the petitioner does not have neck tattoos, and,

therefore, it was of value to the petitioner to have eyewitness testimony describing the shooter as having such. In an oral statement to Mertes on the night of the murder, Quinones described the tattoos as praying hands on the right side of the shooter's neck, and Japanese writing on the left side. The petitioner alleges in his brief that another witness, Norman Figueroa, also described the shooter as having neck tattoos. However, Figueroa's alleged statement is not corroborated by the record, nor does the petitioner argue that the statement should have been presented by trial counsel, and there is no mention or analysis of any impact of such potential testimony in the petitioner's brief. We therefore deem this argument abandoned and decline to review it. See *Fradianni* v. *Protective Life Ins. Co.*, 145 Conn. App. 90, 92 n.2, 73 A.3d 896 (claim or argument not briefed deemed abandoned), cert. denied, 310 Conn. 934, 79 A.3d 888 (2013).

[4] Two attorneys, George Flores and Sara Bernstein, represented the petitioner at trial; he alleges that both rendered ineffective assistance of counsel.

[5] "The excited utterance exception is well established. Hearsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." (Internal quotation marks omitted.) *State* v. *Kendall*, 123 Conn. App. 625, 666, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010). Mertes testified at the habeas trial that Quinones appeared excited and upset while describing the shooter. The petitioner relies on this testimony in an attempt to argue that Quinones' statement would unequivocally have been admitted under the spontaneous utterance exception to the hearsay rule. This is not necessarily so. The record reflects that Mertes did not have immediate contact with her after the shooting. Therefore, it is not clear that Quinones' statement was admissible under the spontaneous utterance exception, as it must have been made under such circumstances as to negate the "opportunity for deliberation and fabrication by the declarant." (Internal quotation marks omitted.) Id. Regardless, and as later explained, we need not reach a conclusion as to whether Quinones' statement qualified as a spontaneous utterance.

[6] The petitioner also argues that trial counsel failed to adequately research whether Quinones' statement would fall under the spontaneous utterance exception. In light of the fact that trial counsel weighed the potential admission of Quinones' statement against other potentially damaging evidence that would then have likely been admitted, we need not address whether such a failure constitutes deficient performance.

[7] In reconstructing the circumstances, "a reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 632, 126 A.3d 558 (2015).

[8] The discrepancy between Quinones' original statement and the other eyewitnesses' testimony was perhaps due to a fear of retaliation by the petitioner, as it appeared from the record that more than one witness was fearful of presenting testimony against him.

[9] Quinones' identification statement was originally made to Detective Siemionko during the course of his investigation.

[10] Conn. Code. Evid. § 8-8 states: "When hearsay has been admitted in evidence, the credibility of the declarant may be impeached, and if impeached may be supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement of the declarant made at any time, inconsistent with the declarant's hearsay statement, need not be shown to or the contents of the statement disclosed to the declarant."

[11] The record also reflects that Quinones knew the petitioner, which would amount to an additional reason not to try to admit her statement into evidence.

[12] We have set forth a variety of ways that the trial court could have admitted Quinones' statement. It is well settled that a trial court's "ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Dunbar*, 51 Conn. App. 313, 323–24, 721 A.2d 1229 (1998), cert. denied, 247 Conn. 962, 724 A.2d 426

(1999). Thus, the trial court would likely have been well within its province to admit Quinones' statement under the previously mentioned methods.

[13] Because the petitioner has failed to meet the performance prong of *Strickland*, we need not reach the issue of prejudice under *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Emphasis omitted; internal quotation marks omitted.) *Small* v. *Commissioner*, 286 Conn. 707, 713, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

[14] It should be noted that the petitioner, in his brief, equates the duty of defense counsel under *Strickland* to provide effective assistance of counsel to the duty of prosecutors under *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose exculpatory evidence. In sum, the petitioner argues that this court should conclude that the failure of trial counsel to present Quinones' testimony is equivalent to a *Brady* violation because of its exculpatory content. This is incorrect and must be addressed. Prosecutors have a duty under *Brady* and rule 3.8 (4) of the Rules of Professional Conduct to disclose "to the defense . . . all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . . ." No such duty applies to defense counsel. As explained previously, defense counsel has the discretion to make a strategic decision whether to present a witness' statement that, although potentially exculpatory in nature, may hurt rather than help the defense's case.