## STATE OF CONNECTICUT *v.* ANGEL NIEVES
### (AC 28463)

Flynn, C. J., and DiPentima and Pellegrino, Js.

---

Argued October 22, 2007—officially released February 26, 2008

[redacted]

*Alice Osedach,* assistant public defender, for the appellant (defendant).

*Sarah Hanna,* deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, *James E. Thomas,* former state's attorney, and *Dennis J. O'Connor,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Angel Nieves, appeals from the judgment of conviction of murder in violation of General Statutes § 53a-54a (a),[1] carrying a pistol without a permit in violation of General Statutes § 29-35[2] and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1).[3] The charges of murder and carrying a pistol were tried to the jury. The charge of criminal possession of a firearm was tried to the court. On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress certain pretrial and in-court identifications, and (2)

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 29-35 provides in relevant part: "(a) No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

[3] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm or electronic defense weapon and (1) has been convicted of a felony . . . ."

instructed the jury regarding the thoroughness of the police investigation. We affirm the judgment of the trial court.

The following facts and procedural history inform our disposition of the defendant's claims. On April 18, 2002, at approximately 8 p.m., the victim, Raphael Mendez, was shot four times and killed at the Sands housing complex in Hartford. The defendant was arrested in connection with Mendez' death on March 27, 2003, and charged with murder in violation of § 53a-54a (a), carrying a pistol without a permit in violation of § 29-35 and criminal possession of a firearm in violation of § 53a-217 (a) (1). The defendant elected a jury trial on the charges of murder and carrying a pistol without a permit, and a trial to the court on the charge of criminal possession of a firearm. The jury returned a guilty verdict on both of the charges tried before it, and the court found the defendant guilty of the third charge. The court sentenced the defendant to life (sixty years) imprisonment, with a mandatory minimum of twenty-five years, for the murder conviction. The court further sentenced the defendant to four years imprisonment for the conviction of each of the firearms violations, with a mandatory minimum of one year on the count of carrying a pistol without a permit and a mandatory minimum of two years on the count of criminal possession of a firearm. The three sentences were to be served consecutively for a total effective sentence of sixty-eight years, with a mandatory minimum of twenty-eight years. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion to suppress the identifications made

by three witnesses who identified him as the shooter.[4] Specifically, the defendant claims that each of the identifications was the product of an unnecessarily suggestive identification procedure in violation of his right to due process and a fair trial under the fifth and fourteenth amendments to the United States constitution.[5] We reject the defendant's claim.

On September 7, 2004, the defendant filed a motion to suppress the identifications made by three witnesses to the shooting, Sean Butler, Edith Abuyounis and Mayra Rios. Butler and Rios had identified the defendant from photographic arrays prepared by the Hartford police. Abuyounis had identified the defendant after observing him appear in court as the person charged with shooting the victim. The court, after hearing five days of testimony on the defendant's motion in May, 2005, orally denied the defendant's motion. The court

[4] The defendant's motion to suppress challenged "any pretrial or in-court identification of the defendant," including the identification made by a fourth witness, Edward Bones. The defendant, however, does not address the fourth identification in his brief to this court. Accordingly, we decline to review the defendant's claim with respect to the fourth witness. See *State* v. *Blango*, 103 Conn. App. 100, 116 n.11, 927 A.2d 964 ("[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." [Internal quotation marks omitted.]), cert. denied, 284 Conn. 919, 933 A.2d 721 (2007).

[5] The defendant further claims that the identifications violated his rights under article first, § 8, of the constitution of Connecticut. The defendant, however, has failed to provide an analysis of his claim under the constitution of Connecticut independent of his claim under the analogous provisions of the United States constitution. "[W]e will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 159 n.5, 921 A.2d 622 (2007). Accordingly, we confine our analysis to the defendant's federal constitutional claim. See *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

thereafter, on October 26, 2005, issued a written memorandum of decision on the motion.

Before we address each of the challenged identifications in turn, we set forth the applicable standard of review as stated by our Supreme Court. "[T]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail on his claim, the defendant has the burden of showing that the trial court's determinations of suggestiveness and reliability both were incorrect. . . .

"Furthermore, [w]e will reverse the trial court's ruling [on evidence] only where there is an abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of factbound determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 384–85, 933 A.2d 1158 (2007).

"Because, [g]enerally, [t]he exclusion of evidence from the jury is . . . a drastic sanction, one that is limited to identification testimony which is manifestly suspect . . . [a]n identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." (Internal quotation marks omitted.) Id., 385. "Absent a very substantial likelihood of irreparable misidentification, [w]e

are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." (Internal quotation marks omitted.) *State* v. *Cook*, 262 Conn. 825, 837, 817 A.2d 670 (2003). "To determine whether a photographic array is unnecessarily suggestive, a reviewing court considers various factors, including, but not limited to: (1) the degree of likeness shared by the individuals pictured . . . (2) the number of photographs included in the array . . . (3) whether the suspect's photograph prominently was displayed or otherwise was highlighted in an impermissible manner . . . (4) whether the eyewitness had been told that the array includes a photograph of a known suspect . . . (5) whether the eyewitness had been presented with multiple arrays in which the photograph of one suspect recurred repeatedly . . . and (6) whether a second eyewitness was present during the presentation of the array." (Citations omitted.) *State* v. *Randolph*, supra, 284 Conn. 385–86.

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . . *Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)." (Internal quotation marks omitted.) *State* v. *Cook*, supra, 262 Conn. 836–37. "[W]e examine the legal question of reliability with exceptionally close scrutiny and defer less than we normally do to the related fact finding of the trial court." (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 469, 853 A.2d 478 (2004). "[B]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable."

(Internal quotation marks omitted.) *State* v. *Randolph*, supra, 284 Conn. 384. "To determine whether an identification that resulted from an unnecessarily suggestive procedure is reliable, the corruptive effect of the suggestive procedure is weighed against certain factors, such as the opportunity of the [witness] to view the criminal at the time of the crime, the [witness'] degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the [identification] and the time between the crime and the [identification]." (Internal quotation marks omitted.) *State* v. *Cook*, supra, 837; see also *Neil* v. *Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

We thoroughly have reviewed the record in this case. We conclude that the court's findings of the subordinate facts are supported adequately by the evidence presented at the suppression hearing and the reasonable inferences drawn therefrom. Accordingly, we will not disturb the court's findings but instead focus our discussion on the court's ultimate conclusions on the critical issues of suggestiveness and reliability.

A

The defendant argues that the identification procedure used with Butler was unnecessarily suggestive because the detectives never warned Butler that the suspect may not have been included in the photographic array through which Butler identified the defendant; the photographic array identification procedure was not a double-blind, sequential procedure;[6] the defendant

---

[6] "A double-blind photographic identification procedure is one in which the officer conducting [the procedure] has not been involved in the investigation and does not know who the target is. . . . A sequential photographic identification procedure involve[s] showing the witness the suspect and other fillers on the identification procedure one at a time, rather than the traditional practice of simultaneous presentation." (Citation omitted; internal quotation marks omitted.) *State* v. *Nunez*, 93 Conn. App. 818, 825 n.3, 890 A.2d 636, cert. denied, 278 Conn. 914, 899 A.2d 621, cert. denied, 549 U.S. 906, 127 S. Ct. 236, 166 L. Ed. 2d 186 (2006).

was the only one of eight suspects wearing a turtleneck sweater in the photographic array; and the defendant's photograph was placed near the center of the photographic array rather than near the periphery. The defendant further argues that the identification procedure was unreliable because Butler did not know the defendant and was not familiar with him; Butler's observation of the shooter occurred at dusk from a distance of fifteen feet; prior to making his identification, Butler could not give a detailed description of the shooter to the police; Butler observed the shooter for a very short period of time and his attention at the time was not optimal; and Butler's description of the sequence of events that occurred at the time he observed the shooter conflicted with others' descriptions of the same events. We disagree with the defendant's argument that the procedure was unnecessarily suggestive.

With respect to Butler's identification, the court found the following facts. On April 18, 2002, Butler was working as a security guard for the Sands housing complex. He did not witness the shooting, but he did observe someone flee from the scene and enter a black Volvo automobile. He did not know the person who entered the Volvo and did not observe a gun in that person's hand.

On April 22, 2002, at the request of the Hartford police, Butler viewed a photographic array prepared by Detective William Siemionko. The array was comprised of photographs of eight individuals who all strongly resembled the defendant. In the array that Butler viewed, the defendant's photograph was located in a different position from where Siemionko had placed it in arrays that he had shown to other witnesses. Siemionko told Butler to look at the photographic array and to determine whether he recognized any of the individuals as the person he saw fleeing the Sands housing complex on the night of the shooting. The detective told Butler

to take his time and, if he recognized one of the individuals in the photographic array, to circle that person's picture and then sign and date the photographic array. Siemionko did not suggest to Butler that the police had a suspect. He also made no suggestion as to which photograph Butler should select or whether he should select any photograph at all. Of the eight individuals depicted in the array, Butler recognized the defendant as the person he had seen fleeing in the Volvo on the night of the shooting. He circled the photograph of the defendant and signed and dated the array. Butler testified that he was 90 percent certain that the photograph he had circled depicted the person he had seen fleeing from the scene of the shooting. He again identified the defendant in court at the suppression hearing.

On the basis of its factual findings, the court properly concluded that the photographic array from which Butler identified the defendant did not create a very substantial likelihood of irreparable misidentification. The photographic array viewed by Butler belies the defendant's first argument that the detectives never warned Butler that the suspect's photograph may not be included in the array. The array contains a conspicuous notice that cautions the viewer that "[y]ou should not conclude or guess that the photographs contain the person who committed the offense under investigation."[7] Moreover, the failure to provide such a warning to the witness does not render the identification unnecessarily suggestive. See *State* v. *Williams*, 203 Conn. 159, 177, 523 A.2d 1284 (1987) ("[w]hen . . . the victim

[7] The notice, in its entirety, states: "NOTICE: You have been asked to look at this group of photographs. The fact that they are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the person who committed the offense under investigation. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss this case with other witnesses nor indicate in any way that you have, or have not identified someone."

would have inferred [without police comment] that the occasion for [her] being requested to identify someone is that the police have a particular person in mind who has been included among those to be viewed, police statements to that effect do not render the identification procedure unnecessarily suggestive" [internal quotation marks omitted]). Accordingly, we reject the defendant's first argument.

The defendant's other arguments are equally unavailing. Due process does not require the suppression of a photographic identification that is not the product of a double-blind, sequential procedure. *State* v. *Nunez*, 93 Conn. App. 818, 828–32, 890 A.2d 636, cert. denied, 278 Conn. 914, 899 A.2d 621, cert. denied, 549 U.S. 906, 127 S. Ct. 236, 166 L. Ed. 2d 186 (2006). Further, the fact that the defendant was the only person in the array wearing a turtleneck sweater does not mandate a conclusion that Butler's attention was improperly focused on the defendant. See *United States* v. *Brennick*, 405 F.3d 96, 100 (1st Cir. 2005) ("[a]s none of the witnesses described [the defendant] as wearing a zippered mock turtleneck and the other men pictured in the array are not uniformly dressed in a manner that makes [the defendant] stand out, it is irrelevant that he is the only one pictured wearing one"); *United States* v. *Fletcher*, 121 F.3d 187, 194–95 (5th Cir.), cert. denied, 522 U.S. 1063, 118 S. Ct. 725, 139 L. Ed. 2d 664 (1998). "The question . . . is not whether the defendant's photograph could be distinguished from the other photographs, but whether the distinction made it unnecessarily suggestive." *State* v. *Nunez*, supra, 828; id., 827 (no constitutional mandate gives defendant right to photographic array of look-alikes); see also *United States* v. *Thai*, 29 F.3d 785, 808 (2d Cir.) (principal question is whether photograph of accused, matching descriptions given by witness, so stood out from all other photographs as to suggest to identifying witness

that accused more likely to be culprit), cert. denied sub nom. *Lan Ngoc Tran* v. *United States*, 513 U.S. 977, 115 S. Ct. 456, 130 L. Ed. 2d 364, cert. denied sub nom. *Minh Do* v. *United States*, 513 U.S. 993, 115 S. Ct. 496, 130 L. Ed. 2d 406 (1994). Likewise, the fact that the defendant's photograph was in the center of the array does little to increase the likelihood of irreparable misidentification. See *United States* v. *Carter*, 410 F.3d 942, 949 (7th Cir. 2005); *United States* v. *Brennick*, supra, 99–100; *United States* v. *Fletcher*, supra, 194–95. The court did not abuse its discretion when it concluded that the identification procedure used with Butler was not unnecessarily suggestive.

In order to prevail on his claim that Butler's identification was inadmissible at trial, the defendant must demonstrate both that the identification procedure was unnecessarily suggestive and that, under the totality of the circumstances, the resulting identification was not reliable. "Only if the procedures used to identify the accused are unnecessarily suggestive are we required to analyze the factors that determine the reliability of an identification for due process purposes." *State* v. *Miller*, 202 Conn. 463, 470, 522 A.2d 249 (1987). Because we conclude that the identification procedure used with Butler was not unnecessarily suggestive, we do not reach the question of the reliability of the resulting identification. See *State* v. *Holliman*, 214 Conn. 38, 48–49, 570 A.2d 680 (1990). The court properly denied the defendant's motion to suppress with respect to Butler's pretrial identification.

B

The defendant next argues that the identification procedure used with Abuyounis was unnecessarily suggestive because she made the identification after others told her that "Cholo" shot the victim and after she had observed the defendant appear in court as the person

charged with shooting the victim. The defendant further argues that the identification was unreliable because Abuyounis lacked familiarity with the defendant; her identification was not on the basis of her independent memory of the night of the shooting; she had little opportunity to observe the shooter as he fled the scene of the crime; she could not give a detailed description of the shooter; and she made the identification more than one year after the shooting. We reject the defendant's arguments that the identification was unreliable.

With respect to Abuyounis' identification, the court found the following facts. Abuyounis lived at the Sands housing complex and was home on the evening of the shooting. She saw the victim, her nephew, approximately one-half hour before the shooting as he passed by her apartment and waved. One-half hour later, she heard a "popping" sound and heard screaming and other commotion in the courtyard of the housing complex. Abuyounis ran outside to see what was happening and saw her nephew lying on the ground. She also saw another man, whom she recognized, running with a gun in his hand down the hill toward the rear of the housing complex. When other people in the courtyard started yelling, "Cholo," she recalled that the man with the gun was the person, known by the name "Cholo," whom she had seen "hanging around" with her nephew. She also had seen "Cholo" at her sister's house prior to the shooting.

On her own initiative, Abuyounis attended court a number of times in connection with this case in support of her sister, the victim's mother. On some of those occasions, she observed the defendant in court and knew he had been charged in connection with her nephew's death. Thereafter, on May 15, 2003, Abuyounis spoke with Siemionko. A few weeks later, she gave a voluntary statement to the police, in which she stated what she had observed on the night of the shooting and

identified "Cholo" as the person whom she had seen running from the scene with a gun in his hand. At the suppression hearing, Abuyounis again identified the defendant, with 100 percent certainty, as the man whom she knew as "Cholo" and whom she had witnessed running through the courtyard.

"[I]t is well established that conduct that may fairly be characterized as state action is a necessary predicate to a challenge under the due process clause . . . . If an identification of a defendant is done spontaneously and is not arranged by the police, the identification is not tainted by state action and due process rights are not violated." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 59 Conn. App. 762, 766, 757 A.2d 689 (2000), cert. denied, 255 Conn. 924, 767 A.2d 99 (2001). "[E]ven if the defendant's claim has no constitutional underpinning, [however,] the criteria established for determining the admissibility of identifications in the due process context are appropriate guidelines by which to determine the admissibility of identifications that result from procedures conducted by civilians." *State* v. *Holliman,* supra, 214 Conn. 46.

On the basis of its factual findings, the court properly concluded that Abuyounis' identification was not prompted, arranged or enhanced by police action and that no police identification procedure was involved in her identifying the defendant as the person who shot the victim. Further, the court reasonably concluded that even if it assumed that Abuyounis' identification was the product of unnecessary suggestion, it nonetheless was reliable because any suggestiveness was outweighed by her physical proximity to the shooter at the time she observed him fleeing he scene, the level of detail in her description of the shooter, the level of certainty she exhibited in her identification of the defendant and her familiarity with the defendant prior to

the shooting. The court's conclusions are legally and logically correct and supported by the facts set forth in its memorandum of decision. The court properly denied the defendant's motion to suppress with respect to Abuyounis' in-court identification.

## C

The defendant next argues that the identification made by Rios was unnecessarily suggestive because, similar to the procedure used with Butler, the photographic array procedure through which she identified the defendant was not a double-blind procedure and because the defendant's photograph was placed in the center of the array as opposed to near the periphery. The defendant further argues that Rios' identification was unreliable because the first time she identified him as the shooter, she provided the police with a false name for herself instead of disclosing her true identity. We reject the defendant's argument that the procedure was unnecessarily suggestive for the same reasons that we reject the defendant's arguments with respect to the identification procedure used with Butler. See part I A. Accordingly, we conclude that the court properly denied the defendant's motion to suppress with respect to Rios' pretrial identification.

## II

The defendant next claims that the court improperly instructed the jury regarding the competence of the police and the thoroughness of their investigation. Specifically, the defendant claims that the court's instruction effectively removed from the jury's consideration the adequacy of the police investigation, thereby interfering with his right to present a defense, undermining the presumption of innocence and diluting the state's burden of proof, all in violation of his constitutional rights under the fifth, sixth and fourteenth

amendments to the United States constitution.[8] We disagree.

Before we reach the merits of the defendant's claim, we first address the state's argument that the defendant's claim was not preserved properly at trial. Specifically, the state argues that the defendant took exception to the instruction at trial on the ground that the instruction was not relevant under the facts of this case but now claims on appeal that the instruction violated his rights under the United States constitution.

Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury." The purpose of this rule "is to alert the court to any claims of error while there is still an opportunity for correction . . . to avoid trial by ambush [of the presiding judge and the opposing party]." (Citation omitted; internal quotation marks omitted.) *State* v. *Paulino*, 223 Conn. 461, 476, 613 A.2d 720 (1992).

The defendant concedes in his reply brief that he did not raise his constitutional claim distinctly before the trial court.[9] The defendant, therefore, failed to preserve

[8] The defendant further claims that the instructions violated his rights under article first, § 8, of the constitution of Connecticut. The defendant again has failed to provide an analysis of his claim under the constitution of Connecticut independent of his claim under the analogous provisions of the United States constitution. See footnote 5. Accordingly, we discuss only the defendant's federal constitutional claim. Id.

[9] Our review of the record reveals the following. Prior to the close of evidence, the court held a charging conference on May 25 and 26, 2007. During that conference, the state requested an instruction on the police investigation, which was granted. The record does not reveal whether, off the record, the defendant objected to the state's request, but on the record,

his constitutional claim at trial. Accordingly, in order to prevail on his claim that the instruction violated his constitutional rights, the defendant must satisfy the four conditions set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[10]

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id. We reject the defendant's claim because no constitutional violation clearly exists, and the defendant was not deprived of a fair trial.

---

the court asked whether counsel wanted "to add or subtract from [its] summary of the charge conference." The defendant's counsel responded: "No, Your Honor. I had several requests, and I think that they were incorporated into your charge, perhaps not word for word, but the substance of it, so I'm satisfied." Thereafter, prior to the state's rebuttal to her closing argument, the defendant's counsel "reiterated" her objection to the instruction on the police investigation, stating: "I really don't think that that came into the case at all. It certainly wasn't part of [the defendant's] argument, and I suspect it won't be part of [the state's]." Finally, after the court had charged the jury, the defendant's counsel stated: "Your Honor, just as previously noted, we object to the portion of the charge on page fifteen regarding police investigations . . . for the reasons stated." Even if the defendant had not conceded the point, on the basis of the record before us, we conclude that the defendant did not raise before the trial court any constitutional ground for his objection to the police investigation instruction.

[10] The defendant asserted *Golding* review in his initial brief as an alternate basis for review of his constitutional claim.

In its charge to the jury, the court instructed the jurors, inter alia: "During the course of the case, you've heard some discussion or questioning as to whether the police conducted a thorough investigation and the competency of the police in this case. The issue before you in this case is not the thoroughness of the investigation or the competence of the police. The issue you have to determine is whether the state, in light of the evidence before you, has proven beyond a reasonable doubt [that] the defendant is guilty of the crimes charged."

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that clearly deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the *court's instruction*. . . . To determine whether it is reasonably possible that the jury was misled by the court's instruction, [t]he test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . The challenged instruction must be analyzed for its probable effect on the jury in the context of the entire charge and the entire trial, rather than as individual sentences or phrases viewed in isolation. . . . In evaluating a jury instruction under prong three of *Golding*, [w]e will not sever one part of the instruction and analyze it separately from the whole." (Citations omitted; internal quotation marks omitted.) *State v. Tate*, 59 Conn. App. 282, 286–87, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000).

In *Tate*, the trial court instructed the jury as follows: "[t]he issue before you is not the thoroughness of the investigation of the responding police officer; the issue you have to determine is whether the state, in light of all the evidence before you, has proved the defendant's guilt beyond a reasonable doubt as I have recited that to you. That is the sole issue." (Internal quotation marks

omitted.) Id., 284. On appeal, we concluded that this jury instruction was not improper because repeatedly throughout the lengthy and detailed jury instructions, the court clearly and definitively instructed the jury that the burden rests solely on the state to prove the accused guilty of the charges and that the defendant is presumed innocent unless and until the state proves the defendant's guilt beyond a reasonable doubt. Id., 287; see also *State* v. *Williams*, 169 Conn. 322, 335–36, 335 n.3, 363 A.2d 72 (1975) (concluding on basis of similar instructions that when read as whole, instructions adequately instructed and gave jury clear understanding of issues involved and proper guidance in determining issues).

The defendant contends that the jury instruction now at issue misled the jury into believing that the state's burden of proof was less than beyond a reasonable doubt and that the instruction suggested to the jury that he had an evidentiary burden to prove his innocence, or at least to raise a reasonable doubt as to his guilt. A thorough review of the transcripts and the jury instruction in its entirety, however, reveals that there is no reasonable possibility that the jury was misled by the challenged jury instruction. Repeatedly, throughout the lengthy and detailed jury instructions, the court, in clear and legally correct terms, definitively instructed the jury that the burden rests solely on the state to prove the accused guilty of the charges and that the defendant is presumed innocent unless and until the state proves the defendant's guilt beyond a reasonable doubt. Moreover, the court instructed the jury that reasonable doubt "has its foundation in the evidence *or lack of evidence*." (Emphasis added.) The defendant's attempts to distinguish this case from *State* v. *Tate*, supra, 59 Conn. App. 282, are unpersuasive. As we observed in *Tate*, the court's numerous and accurate instructions about the

state's burden of proof certainly "eliminated any reasonable likelihood of juror misunderstanding as to the state's burden and the proof necessary for a conviction." (Internal quotation marks omitted.) Id., 289.

Because a reading of the entire jury instructions reveals that there is no reasonable possibility that the jury was misled, the defendant has failed to establish that a constitutional violation clearly exists and clearly deprived him of a fair trial pursuant to *Golding*'s third prong. Accordingly, we reject the defendant's unpreserved claim that the court's instruction to the jury regarding the police investigation was improper.

The judgment is affirmed.

In this opinion the other judges concurred.