******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* WAGNER GOMES
### (AC 41364)

Alvord, Moll and Bear, Js.

*Syllabus*

Convicted of the crime of assault in the second degree in connection with his conduct in hitting the victim in the head with a bottle, the defendant appealed to this court. The defendant and another individual, M, had been fighting in a bar as a result of offensive remarks that M made to the defendant's girlfriend. After security guards separated the defendant and M, the victim asked M why he was fighting, and the defendant struck the victim with the bottle. On appeal, the defendant claimed that the trial court deprived him of his right to present a defense of investigative inadequacy when it omitted from its instructions to the jury certain language in his written request to charge that pertained to the police investigation into the incident as it might relate to weaknesses in the state's case. The defendant claimed that without the inclusion of the language he requested, the jury would not have understood how to use the evidence he elicited at trial about the inadequacies of the police investigation. *Held* that the trial court did not mislead the jury or violate the defendant's right to present a defense by omitting the requested language from its instructions: that court's jury charge was identical to the model jury instruction provided on the Judicial Branch website and was in keeping with long-standing Connecticut law, nearly identical instructions have been upheld by our Supreme Court, the defendant presented his evidence to the jury and cross-examined the state's witnesses regarding the alleged inadequacy of the police investigation, and the court did not direct the jury to disregard that evidence or argument, and specifically instructed the jury to consider all of the evidence before it; moreover, the court, in its charge on investigative inadequacy, repeated to the jury its responsibility to determine whether the state, in light of all the evidence, had proved beyond a reasonable doubt that the defendant was guilty of the count with which he was charged.

Argued March 5—officially released September 24, 2019

*Procedural History*

Substitute information charging the defendant with the crime of assault in the second degree, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, and tried to the jury before *Doyle, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga* and *Margaret E. Kelley*, state's attorneys, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Wagner Gomes, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1] On appeal, the defendant claims that the trial court erred in omitting from its jury instruction his proposed sentence, "[h]owever, you may consider evidence of the police investigation as it might relate to any weaknesses in the state's case,"[2] and, in doing so, deprived him of his right to present a defense of investigative inadequacy.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the early morning hours of September 12, 2015, the victim, Edilene Brandao, along with several other persons, including Raphael Morais,[4] attended a birthday party at the Brazilian Sports Club (club), located at 29 Federal Street, in Bridgeport. Shortly after arriving, the victim had one drink, and Morais went to the bar to get a drink for himself. Morais confronted the defendant's girlfriend, who was at the bar, pushed her, and made offensive remarks to her. A fight then broke out inside the club between the defendant and Morais. Security guards intervened and separated them. The defendant was taken outside, and Morais was taken to the patio.

The victim went to the patio with Morais. There was a fence at the back of the patio, and the victim had her back to that fence. The victim proceeded to ask Morais why he was fighting, and Morais responded, "it's him." The victim then turned to face the fence and saw the defendant standing approximately two feet away from her, on the outside of the fence, with a bottle in his hand. The defendant then struck the victim on the forehead with the bottle.

The club's owner, Demetrio Ayala, Jr., knew the defendant because he visited the club several times per month. Ayala observed the fight between the defendant and another person known to him as "Rafael."[5] Ayala, after hearing shouting on the patio, went to investigate and discovered that the victim was bleeding. Ayala then went out the front door of the club in order to try to find the defendant, whom he saw in the parking lot running away from the club. Ayala subsequently called the police.

Before the police arrived, the victim was transported to St. Vincent's Medical Center in Bridgeport by private car in the company of several persons who were in the club that night. She arrived at the hospital at about 12:30 a.m., where she was seen by a triage nurse and received treatment for the bleeding and pain. Several hours later, the victim was also treated by a plastic surgeon and then released.[6]

John Topolski and Matthew Goncalves, officers with the Bridgeport Police Department, were among the first

police officers to arrive at the club shortly after 1:30 a.m. Upon their arrival, they observed that "[the scene] was a mess" and that "there [were] maybe a hundred people scattered amongst the streets." Officer Topolski briefly spoke with Morais, who had, he observed, a swollen face, one eye that was swollen shut, profuse facial bleeding, clothes covered in blood, and an apparently dislocated shoulder.[7] Once the scene was secure, the officers departed for the hospital, intending to question Morais, who also had been taken to the hospital before the police completed their initial on-site investigation. While the officers were en route to the hospital, they received a radio dispatch informing them that a woman, who also had been injured at the club, was already at the hospital.

When the officers arrived at the hospital, Officer Topolski went in search of the injured woman, and Officer Goncalves went in search of Morais. Although Officer Goncalves located Morais, he was unable to speak with Morais because his wounds were being treated, and he was being prepared for surgery. Officer Topolski located the victim in the waiting area of the hospital's emergency department and identified her as the woman who had been injured at the club. The victim was in the company of approximately five other individuals. Officer Topolski observed that the victim was crying and visibly shaken. She had blood covering her face and was holding gauze to her head. Despite her physical and emotional condition, the victim was coherent enough to provide information to Officer Topolski. In her verbal statement to Officer Topolski, the victim denied that Morais may have been the aggressor in some type of altercation with her. Officer Topolski, while he was at the hospital, also obtained the name of the defendant, but it was not clear from whom he received that information.[8]

On October 2, 2015, the victim went to the Bridgeport police station with her attorney, where she was interviewed by Detective Paul Ortiz in the presence of Sergeant Gilbert Valentine about the events that occurred on September 12, 2015. Detective Ortiz reviewed Officer Topolski's report of the events. Through this report, Detective Ortiz learned that the defendant might be a suspect. Detective Ortiz prepared a photographic array that included a photograph of the defendant, which he showed to the victim. When the victim viewed the photograph of the defendant, she became emotional and started to cry. She examined the entire array and then selected the defendant's photograph, on which she wrote that she was "100 percent" confident that he was the person who had attacked her. The defendant was subsequently arrested.

At trial, the defendant sought to persuade the jury that reasonable doubt existed regarding the victim's identification of the defendant as the person who

assaulted her. The main defense advanced by the defendant was that the police had conducted an inadequate investigation of the incident.

During closing arguments, defense counsel argued that "this case screams reasonable doubt. . . . [T]he police completely failed in this case, and they completely failed [the victim]. They didn't go back to that scene that night. They didn't identify the crime scene. They didn't take any photos so that you, ladies and gentlemen, could see how the scene looked that night. How the lighting looked. They never tried to get any surveillance video. . . . They didn't confirm what happened." Defense counsel also argued that the police "spent ninety minutes on this investigation," and that the case "boil[ed] down to one witness and what she saw in a split second, and she may very well believe that [the defendant] did this to her. But the police did nothing to confirm as to what Officer Goncalves said they needed to do."

In connection with his defense of inadequate police investigation, the defendant had filed a written request to charge the jury, which provided in relevant part: "[1] You have heard some arguments that the police investigation was inadequate and biased. [2] The issue for you to decide is not the thoroughness of the investigation or the competence of the police. [3] However, you may consider evidence of the police investigation as it might relate to any weaknesses in the state's case. [4] Again, the only issue you have to determine is whether the state, in light of all the evidence before you, has proved beyond a reasonable doubt that the defendant is guilty of the counts with which he is charged."[9]

On October 27, 2018, the court held a charge conference. In discussing the final charge, the court told defense counsel that it would be charging on the adequacy of the police investigation, in a form that was somewhat similar to the defendant's requested instruction, but that "[i]t may be a little bit different."

The court instructed the jury in relevant part: "You have heard some arguments that the police investigation was inadequate and that the police involved in the case were incompetent or biased. The issue for you to decide is not the thoroughness of the investigation or the competence of the police. The only issue you have to determine is whether the state, in light of all the evidence before you has proved beyond a reasonable doubt that the defendant is guilty of the counts with which he was charged." Defense counsel objected to the court's omission of point three of his requested instruction.

The jury subsequently found the defendant guilty of assault in the second degree in violation of § 53a-60 (a) (2). The court rendered judgment in accordance with

the jury's verdict and imposed a total effective sentence of five years of imprisonment, execution suspended after two years, followed by three years of probation. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the jury instructions, as given, deprived him of his right to present a defense of investigative inadequacy. Specifically, the defendant argues that the court erred in failing to include point three of his requested jury charge, which reads: "However, you may consider evidence of the police investigation as it might relate to any weaknesses in the state's case." The defendant argues that without the inclusion of this requested sentence, the jury would not "have understood how to use the evidence [the defendant] was able to elicit about the inadequacies of [the police investigation]." We conclude that the court did not err in omitting point three from the jury charge.

We begin by setting forth the standard of review and legal principles that guide our analysis. "[A] fundamental element of due process of law is the right of a defendant charged with a crime to establish a defense. . . . Where, as here, the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . In evaluating the particular charges at issue, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 598–99, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

"While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citations omitted; internal quotation marks omitted.) *State* v. *Aviles*, 277 Conn. 281, 309–10, 891 A.2d 935, cert. denied, 549 U.S. 840, 127 S. Ct. 108, 166 L. Ed. 2d 69 (2006); see *State* v. *Kendrick*, 314 Conn. 212, 225–26, 100 A.3d 821 (2014) (clarifying decision in *Aviles*). "A challenge to the validity of jury instructions presents a question of law over which [we exercise] plenary review." (Internal quotation marks omitted.)

*State* v. *Collins*, supra, 299 Conn. 599.

We conclude that the instruction did not mislead the jury or violate the defendant's right to present a defense. First, the court's charge as given was identical to the model jury instruction provided on the Judicial Branch website.[10] See Connecticut Judicial Branch Criminal Jury Instructions 2.6-14 (November 6, 2014), available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited September 18, 2019). As our Supreme Court has noted, "[w]hile not dispositive of the adequacy of the [jury] instruction, an instruction's uniformity with the model instructions is a relevant and persuasive factor in our analysis . . . ." (Internal quotation marks omitted.) *State* v. *Ebron*, 292 Conn. 656, 688 n.27, 975 A.2d 17 (2009), overruled in part on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 472–73, 10 A.3d 942 (2011); see also *State* v. *Shenkman*, 154 Conn. App. 45, 75, 104 A.3d 780 (2014), cert. denied, 315 Conn. 921, 107 A.3d 959 (2015).

Moreover, the court's instruction was in keeping with long-standing Connecticut law. Nearly identical instructions were upheld by our Supreme Court in *State* v. *Collins*, supra, 299 Conn. 598,[11] and *State* v. *Williams*, 169 Conn. 322, 335 n.3, 363 A.2d 72 (1975),[12] as well as by this court in *State* v. *Nieves*, 106 Conn. App. 40, 57–58, 941 A.2d 358, cert. denied, 286 Conn. 922, 949 A.2d 482 (2008),[13] and *State* v. *Tate*, 59 Conn. App. 282, 284–85, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000).[14]

In *State* v. *Collins*, supra, 299 Conn. 567, our Supreme Court considered and rejected the same arguments being made by the defendant in this case. The defendant in *Collins* claimed that the trial court's instruction with respect to the adequacy of the police investigation, which was nearly identical to the instruction in the present case; see footnote 11 of this opinion; misled the jury and deprived him of his right to present a defense. *State* v. *Collins*, supra, 598. Specifically, he argued that the instruction "destroyed [his] defense by precluding consideration of it and also by conveying the judge's impression that his defense was not worthy of consideration." (Internal quotation marks omitted.) Id. Our Supreme Court disagreed. It held that the instruction "did not mislead the jury or violate the defendant's right to present a defense because it did not direct the jury not to consider the adequacy of the investigation as it related to the strength of the state's case, or not to consider specific aspects of the defendant's theory of the case." Id., 600–601.

In reaching its conclusion, our Supreme Court explained: "In the abstract, whether the government conducted a thorough, professional investigation is not relevant to what the jury must decide: Did the defendant commit the alleged offense? Juries are not instructed to acquit the defendant if the government's investigation

was superficial. Conducting a thorough, professional investigation is not an element of the government's case. . . . A defendant may, however, rely upon relevant deficiencies or lapses in the police investigation to raise the specter of reasonable doubt, and the trial court violates his right to a fair trial by precluding the jury from considering evidence to that effect." (Citations omitted; internal quotation marks omitted.) Id., 599–600.

Our Supreme Court nevertheless concluded that the instruction was not misleading because it "was phrased in neutral language and did not improperly disparage the defendant's claims, or improperly highlight or endorse the state's arguments and evidence"; id., 602; and "properly reminded the jury that its core task was to determine whether the defendant was guilty of the charged offenses in light of all the evidence admitted at trial, rather than to evaluate the adequacy of the police investigation in the abstract." Id., 601.

In the present case, the defendant relies on *State* v. *Wright*, 322 Conn. 270, 140 A.3d 939 (2016), in support of his claim.[15] Specifically, he argues that the present case is distinguishable from *Collins*, *Williams*, *Nieves* and *Tate* "because of [*Wright*'s] clear recognition of investigative omission/adequacy defenses . . . ." In addition, he argues that "the instruction as given here is in conflict with the Supreme Court's decision in [*Wright*]" and that "the model jury instruction did not adequately tell the jury how it could use the investigative omission or inadequacy evidence in light of [*Wright*]." We disagree.

First, the defendant's reliance on *State* v. *Wright*, supra, 322 Conn. 270, is misplaced. In *Wright*, our Supreme Court did not consider the adequacy of a jury instruction on an investigative inadequacy defense. Rather, it addressed a defendant's rights and obligations when he seeks to advance a theory of defense that the police investigation into the crime with which he was charged was inadequate. It concluded that "defendants may use evidence regarding the inadequacy of the investigation into the crime with which they are charged as a legitimate defense strategy"; id., 282; but nevertheless, in that case, neither the "defendant's proposed questions nor his offer of proof established the basis for a claim that the police, in not pursuing certain avenues of investigation, had failed to act in accordance with past established practices or standard police investigative procedures, [and therefore] he cannot establish that the trial court improperly precluded him from advancing an inadequate investigation defense on [that] basis." Id., 281–82. In *Wright*, our Supreme Court did not address, as it did in *Collins*, whether the absence of language instructing the jury on how it could use the evidence rendered the instructions constitutionally deficient.

The present case is distinguishable from *Wright* in that the defendant presented his evidence and cross-examined the state's witnesses regarding the alleged inadequacy of the police investigation. He utilized this evidence as the primary focus of his closing argument. The court did not preclude the defendant from presenting this evidence to the jury, nor did it preclude the jury from considering this evidence. Instead, the court specifically instructed the jury to consider all of the evidence before it.

Moreover, our Supreme Court's decision in *Wright* is consistent with its decision in *Collins*.[16] Although the defendant argues that the significance of *Wright* is its "clear recognition of investigative omission/adequacy defenses," our Supreme Court had previously validated this defense in *Collins*. See *State* v. *Collins*, supra, 299 Conn. 599–600 ("[a] defendant may . . . rely upon relevant deficiencies or lapses in the police investigation to raise the specter of reasonable doubt, and the trial court violates his right to a fair trial by precluding the jury from considering evidence to that effect"). In *Wright*, the court, citing *Collins*, stated: "[T]his court *has recognized* that defendants may use evidence regarding the inadequacy of the investigation into the crime with which they are charged as a legitimate defense strategy." (Emphasis added.) *State* v. *Wright*, supra, 322 Conn. 282. Accordingly, we are not persuaded by the defendant's argument that *Wright* distinguishes the present case from *Collins*, *Williams*, *Nieves* and *Tate*.[17]

Taking into consideration the charge as a whole, we conclude that the jury was not misled by the court's instructions. The defendant presented his evidence to the jury and cross-examined the state's witnesses regarding the alleged inadequacy of the police investigation. The primary focus of the defendant's closing argument was that the police investigation was inadequate and that the jury should, in light of that, find that the state had failed to prove that the defendant was guilty beyond a reasonable doubt.[18] The court did not direct the jury to disregard this evidence or argument. See *State* v. *Collins*, supra, 299 Conn. 600–601 (concluding that instruction did not mislead jury because "it did not direct the jury not to consider the adequacy of the investigation as it related to the strength of the state's case, or not to consider specific aspects of the defendant's theory of the case"); see also *State* v. *Wright*, 149 Conn. App. 758, 773–74, 89 A.3d 458 (holding that defendant's right to fair trial was not impinged, and jury was not misled by court's instruction, where defendant was given opportunity to present evidence and argued to jury regarding deficiencies in police investigation), cert. denied, 312 Conn. 917, 94 A.3d 641 (2014).

Moreover, in *Collins*, our Supreme Court explained that a defendant "may . . . rely upon relevant deficien-

cies or lapses in the police investigation to raise the specter of reasonable doubt . . . .” *State* v. *Collins*, supra, 299 Conn. 599–600. In its charge to the jury on reasonable doubt, the court in the present case instructed the jury that “[a] reasonable doubt may arise from the evidence itself *or from a lack of evidence. . . .* If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, based on the evidence *or lack of evidence,* you have a reasonable doubt as to the defendant’s guilt, you must give him the benefit of that doubt and find him not guilty.” (Emphasis added.) The court, moreover, in its charge on investigative inadequacy, repeated to the jury its responsibility to determine whether the state, in light of all of the evidence, had proved beyond a reasonable doubt that the defendant was guilty of the count with which he was charged. Accordingly, we conclude that the jury was not misled by the instructions given, and, therefore, there was no error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-60 (a) provides in relevant part: “A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, the actor causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . .”

[2] Although the defendant framed his claim on appeal as one of plain error, the state does not argue that the defendant’s claim was unpreserved. Thus, in this opinion, we address whether the court erred in omitting the defendant’s proposed sentence from its charge to the jury.

[3] The defendant also requests that this court exercise its supervisory powers over the administration of justice to “craft a proper investigative evidence instruction.” We decline the defendant’s request. “Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstances where these traditional protections are inadequate to ensure the fair and just administration of the courts.” (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Coward*, 292 Conn. 296, 315, 972 A.2d 691 (2009). For the reasons set forth in this opinion, the defendant’s request does not warrant the exercise of our supervisory powers.

[4] The trial transcripts in this case inconsistently refer to this individual as “Raphael” and “Rafael.” The parties, in their appellate briefs, inconsistently refer to him as “Morais” and “Moais.” For consistency and clarity, we refer to him in this opinion as Morais.

[5] It is not clear from the record whether the individual that Ayala knew as “Rafael” was Raphael Morais. Ayala did not know the last name of the individual whom he referred to as Rafael, and the spelling of the name, Raphael or Rafael, is inconsistent throughout the trial transcripts. Nevertheless, both parties concede in their briefs that the defendant and Morais were engaged in some form of altercation.

[6] The plastic surgeon who treated the victim testified regarding her injuries. Reading from an emergency department attending physician’s note that was in evidence, the plastic surgeon stated: “The patient sustained a deep

laceration in the left eyebrow, and she was struck with a bottle on the face during the fight in the bar. . . . There is a five centimeter in length laceration that's deep with irregular borders and a small stellar portion [over] the left brow . . . ." The plastic surgeon also testified that the "stellar portion" referred to "where the skin . . . bursts open from contact where it stellates, so it just looks like a star. . . . It's not a clean laceration, like you get from a kitchen knife."

[7] There was evidence that, after the defendant struck the victim with the bottle, several other patrons of the club attacked Morais.

[8] The victim testified that she did not give the defendant's name to the police because she did not know the defendant prior to the night she was attacked.

[9] In its brief, the state referenced the individual components of the defendant's requested jury instruction as points one, two, three, and four. For clarity, we adopt the same structure.

[10] Instruction 2.6-14, entitled "Adequacy of Police Investigation," was approved by the Judicial Branch's criminal jury instruction committee on November 6, 2014. It provides: "You have heard some arguments that the police investigation was inadequate and that the police involved in this case were incompetent. The issue for you to decide is not the thoroughness of the investigation or the competence of the police. The only issue you have to determine is whether the state, in light of all the evidence before you, has proved beyond a reasonable doubt that the defendant is guilty of the count[s] with which (he/she) is charged."

The commentary to instruction 2.6-14 states that " '[a] defendant may . . . rely upon relevant deficiencies or lapses in the police investigation to raise the specter of reasonable doubt, and the trial court violates his right to a fair trial by precluding the jury from considering evidence to that effect.' *State* v. *Collins*, [supra, 299 Conn. 599–600] (finding that such an instruction as this does not preclude the jury from considering the evidence of the police investigation as it might relate to any weaknesses in the state's case). '*Collins* does not require a court to instruct the jury on the quality of police investigation, but merely holds that a court may not preclude such evidence and argument from being presented to the jury for its consideration.' *State* v. *Wright*, 149 Conn. App. 758, 773–74, [89 A.3d 458] cert. denied, 312 Conn. 917 [94 A.3d 641] (2014)." Connecticut Judicial Branch Criminal Jury Instructions, supra, 2.6-14, commentary.

[11] In *Collins*, the court instructed the jury in relevant part: "[T]he ultimate issue before you is not the thoroughness of the investigation or the competence of the police. The ultimate issue you have to . . . determine is whether the state in the light of all the evidence before you has proved beyond a reasonable doubt that the defendant is guilty on one or more of the counts for which he is charged." (Internal quotation marks omitted.) *State* v. *Collins*, supra, 299 Conn. 600.

[12] In *Williams*, the court instructed the jury in relevant part: "Now, you have heard in the course of arguments discussion as to whether the police conducted a thorough search. You have also heard some discussion about the competency of the police in this arrest. Now, ladies and gentlemen, this question might be a matter of opinion, but the [s]tate has put its evidence before you, and the defense was entitled to make an investigation and put its evidence before you also, and, of course, not only the [s]tate but also the defense has put on evidence on behalf of the defendant. I say to you, ladies and gentlemen, that the issue before you is not the thoroughness of the investigation or the competence of the police. This issue you have to determine is whether the [s]tate in the light of all the evidence before you has proved beyond a reasonable doubt that the defendant is guilty on one or both counts with which he is charged." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 169 Conn. 335–36 n.3.

[13] In *Nieves*, the relevant portion of the charge provided: "During the course of the case, you've heard some discussion or questioning as to whether the police conducted a thorough investigation and the competency of the police in this case. The issue before you in this case is not the thoroughness of the investigation or the competence of the police. The issue you have to determine is whether the state, in light of the evidence before you, has proven beyond a reasonable doubt [that] the defendant is guilty of the crimes charged." (Internal quotation marks omitted.) *State* v. *Nieves*, supra, 106 Conn. App. 57.

[14] In *Tate*, the court instructed the jury in relevant part: "You've heard questioning regarding the thoroughness of the police investigation in this case. This question might be a matter of opinion, but the state has put its

evidence before you, and the defense is entitled to make an investigation and put its evidence before you also. And, of course, not only the state but also the defense has put on evidence in behalf of the defendant. I tell you that the issue before you is not the thoroughness of the investigation of the responding police officer; the issue you have to determine is whether the state, in light of all the evidence before you, has proved the defendant's guilt beyond a reasonable doubt as I have recited that to you. That is the sole issue." (Internal quotation marks omitted.) *State* v. *Tate*, supra, 59 Conn. App. 284.

[15] The defendant also cites out-of-state authority and argues that "the instruction as given here is in conflict with . . . how similar instructions are phrased in federal courts and in other states." First, the defendant argues that the court's instruction implicates the same concerns as the instruction in *Stabb* v. *State*, 423 Md. 454, 31 A.3d 922 (2011), and *Atkins* v. *State*, 421 Md. 434, 26 A.3d 979 (2011). We are not persuaded. The present case is readily distinguishable from *Stabb* and *Atkins*. In those cases, the trial courts instructed the jury that there was "no legal requirement for the [s]tate to utilize any specific investigative technique or scientific test to prove its case." (Internal quotation marks omitted.) *Stabb* v. *State*, supra, 463; *Atkins* v. *State*, supra, 441–42. In both cases, the Court of Appeals of Maryland determined that the jury instruction invaded the province of the jury and effectively relieved the state of its burden to prove that the defendant was guilty beyond a reasonable doubt. *Stabb* v. *State*, supra, 472; *Atkins* v. *State*, supra, 455. The court in *Atkins* explained why the instruction was improper: "Basically, the instruction directed the jury to ignore the fact that the [s]tate had not presented evidence connecting the knife to the crime, implying that the lack of such evidence is not necessary or relevant to the determination of guilt, and to disregard any argument by defense to the contrary." *Atkins* v. *State*, supra, 453; see also *Stabb* v. *State*, supra, 472 ("[i]n giving the . . . instruction to the jury, the trial court directed effectively the jurors not to consider the absence of a [sexual assault forensics examination] or corroborating physical evidence").

The court's instruction in the present case does not implicate such concerns. The instruction does not imply that the evidence regarding inadequate police investigation was not necessary or relevant to the determination of guilt. Moreover, the court, in its instruction, clearly articulated the state's continuing obligation to prove the defendant's guilt beyond a reasonable doubt.

The defendant also cites to instructions used in federal courts, as well as state courts in Massachusetts. To the extent that the defendant argues that the court erred because its instruction was different from the instructions used in these other jurisdictions, we are not persuaded. Even if, as the defendant argues, the other instructions are "more balanced" or provide better guidance to a jury, we conclude that the instructions that the court provided in the present case were correct in law, adapted to the issues, and sufficient for the guidance of the jury.

[16] Our Supreme Court, in *Wright*, summarized its holding in *Collins*, including its conclusion that the instruction in *Collins* was not improper. See *State* v. *Wright*, supra, 322 Conn. 282. In doing so, the court did not indicate that its holding in *Wright* would render the instruction in *Collins* improper.

[17] The defendant also argues that "the first sentence of the instruction [in] the [present] case is a reason to distinguish it from the instructions in *Williams*, *Tate*, *Nieves* and *Collins*" because the instructions in those cases "[do not] include language similar to the first sentence of the trial court's instruction here . . . ." We disagree. The first sentence of the court's instruction in the present case with respect to investigative inadequacy provided: "You have heard some arguments that the police investigation was inadequate and that the police in this case were incompetent." The defendant argues that this sentence "implies that the defense is attacking the officers' character . . . ." The instructions in *Collins*, *Williams* and *Nieves*, however, each similarly mentioned the competence of the police. See footnotes 11, 12 and 13 of this opinion. We are, therefore, not persuaded that the first sentence of the court's instruction provides any basis for distinguishing this case from the case law in Connecticut. We conclude that the instruction in the present case, like the instruction in *Collins*, "was phrased in neutral language and did not improperly disparage the defendant's claims, or improperly highlight or endorse the state's arguments and evidence." *State* v. *Collins*, supra, 299 Conn. 602.

[18] As noted previously, defense counsel argued to the jury: "[T]his case screams reasonable doubt. . . . [T]he police completely failed in this case,

and they completely failed [the victim]. They didn't go back to that scene that night. They didn't identify the crime scene. They didn't take any photos so that you, ladies and gentlemen, could see how the scene looked that night. How the lighting looked. They never tried to get any surveillance video. . . . They didn't confirm what happened." Defense counsel also argued that the police "spent ninety minutes on this investigation" and the case "boil[ed] down to one witness and what she saw in a split second, and she may very well believe that [the defendant] did this to her. But the police did nothing to confirm as to what Officer Goncalves said they needed to do."

———————————————————